[No. 12596. Department One. —November 26, 1889.]

## JOHN BARRETT, Respondent, v. MARKET STREET RAILWAY COMPANY, Appellant.

Street-railroad — Tender of Fare — Ejection of Passenger. — A passenger upon a street-railroad is not bound to tender the exact fare, but must tender a reasonable sum, and the carrier must accept such tender and furnish change to a reasonable amount. A tender of a five-dollar gold piece by a street-car passenger who has no smaller change is a tender of a reasonable sum; and the passenger who makes such tender cannot be ejected for refusal to pay his fare.

Id. — Duty of Carrier — Reasonable Performance — Demand of Fare. — The duty of a street-railroad as a common carrier to accept and carry passengers must have a reasonable performance, and it is immaterial whether the fare is demanded in advance or not, as the rule in regard to the performance of contracts has no necessary application.

Appeal from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*W. H. L. Barnes,* for Appellant.

A tender of money under any form of contract must be of the precise sum due. (*Butterbee* v. *Davis,* 3 Camp. 70; *Beavans* v. *Rees,* 5 Mees. & W. 306; *Robinson* v. *Cook,* 6 Taunt. 336; *Watkins* v. *Robb,* 2 Esp. 711; *Sargent* v. *Graham,* 5 N. H. 440; 22 Am. Dec. 469; *Boyden* v. *Moore,* 5 Mass. 365; *Blow* v. *Russell,* 1 Car. & P. 365.) The conductor was not obliged to make change. (*Fulton* v. *Grand Trunk R'y Co.,* 17 U. C. Q. B. 433.) The passenger was rightfully expelled for non-payment of fare. (Civ. Code, secs. 2187, 2188.)

*Stanly, Stoney & Hayes,* for Respondent.

It is only a willful refusal to pay fare which justifies the expulsion of a passenger. (Thompson on Carriers, p. 340, sec. 4.)

PATERSON, J.—Action for damages for the forcible ejection of plaintiff from one of defendant's cars. The defense was, that the plaintiff had refused to pay his fare, and that therefore the defendant was justified in ejecting him. The trial court gave judgment for the plaintiff, and the defendant appeals upon the findings.

The material portions of the findings are as follows:—

"That while in said car as such passenger, and when said car was near the corner of Second and Market streets, the conductor in charge of said car, on behalf of the defendant, did, in the course of his employment as such conductor, demand of the plaintiff the payment of the sum of five cents, being the legal fare and cost of transportation on said car; that said plaintiff did not have in his possession any coin or currency of the exact value of five cents, or any coin of any smaller denomination than a five-dollar gold piece, lawful money of the United States, and plaintiff, in response to said demand of said conductor, offered said conductor a five-dollar gold piece, and told said conductor to take his, plaintiff's, fare out of said sum of five dollars; that the conductor refused to accept said five-dollar gold piece, informing the plaintiff that he was unable to make change for said five-dollar gold piece, and insisted upon the payment to him by the plaintiff of the exact sum of five cents, at the same time directing plaintiff if he did not produce and pay said sum of five cents to leave the car; that the plaintiff informed the conductor that the five-dollar gold piece was the smallest coin he had; that he was willing to pay his fare, but could not furnish the exact amount, and refused to leave the car upon the demand of the conductor; that thereupon the conductor stopped said car and called the driver to his assistance, and both of them thereupon seized the plaintiff, and against his protest, opposition, and struggles, forcibly ejected him from said car at the corner of said Second and Market streets, and

in so doing inflicted upon plaintiff various bruises and injuries. . . . .

"And the court finds, from the foregoing facts alone, that the plaintiff did not refuse to pay fare for his transportation on said car, and did not insist upon any right, or supposed right, to be transported free of charge, under any circumstances or upon any condition, and that plaintiff was not ejected or put out of said car for a refusal to pay his fare.

"And as a conclusion of law, from the foregoing facts, the court finds that the plaintiff is entitled to judgment," etc.

It is stipulated by counsel "that if plaintiff were entitled to damages, five hundred dollars was a fair and just estimate thereof."

The question on the merits to which counsel have mainly directed their arguments is, whether the passenger was bound to tender the exact fare. It is argued for the appellant that the rule in relation to the performance of contracts applies, and that the exact sum must be tendered. But we do not think so. The fare can be demanded in advance as well as at a subsequent time. (Civ. Code, sec. 2187.) And so far as this question is concerned, we see no difference in principle where the fare is demanded in advance and where it is demanded subsequently. If it be demanded in advance, there is no contract. The carrier simply refuses to make a contract. Consequently the rule in relation to the performance of contracts, whatever it be, has no necessary application. The obligation of the carrier in such case would be that which the law imposes on every common carrier, viz., that he must, "if able to do so, accept and carry whatever is offered to him, at a reasonable time and place, of a kind that he undertakes or is accustomed to carry." (Civ. Code, sec. 2169.) This duty, like every other which the law imposes, must have a reasonable performance. And we do not think it would in all cases

be reasonable for the carrier to demand the exact fare as a condition of carriage. Suppose that, on entering a street-car, a person should tender the sum of ten cents. Would it be reasonable for the carrier to refuse it? Prior to the act of 1878, the usual fare was six and a quarter cents. In such a case it would be unreasonable for the carrier to demand the exact fare; for there is no coin in the country which would enable the passenger to answer such a demand. It would be impossible for the passenger to furnish such a sum. Consequently, to allow the carrier to maintain such a demand would be to allow him to refuse to perform the duty which the law imposes upon him. The fare which he is now allowed to charge is no longer the sum mentioned. The act of 1878 forbids him to "charge or collect a higher rate than five cents." But there is nothing to prevent a lower rate from being charged. The carrier might fix it at four and a quarter cents. And in such a case it would be equally impossible for the passenger to comply with such a demand as in the case above put. Consequently, it will not do to lay down the rule that the passenger is obliged to tender the exact fare.

But it does not follow that the passenger may tender any sum, however large. If he should tender a hundred-dollar bill, for example, it would be clear that the carrier would not be bound to furnish change. The true rule must be, not that the passenger must tender the exact fare, but that he must tender a reasonable sum, and that the carrier must accept such tender, and must furnish change to a reasonable amount. The obligation to furnish a reasonable amount of change must be considered as one which the law imposes from the nature of the business.

Section 2188 of the Civil Code provides that "a passenger who refuses to pay his fare, or to conform to any lawful regulation of the carrier, may be ejected from the vehicle by the carrier." The question is, whether the

findings show a refusal to pay, — whether the tender of a five-dollar gold piece was sufficient.

It is claimed by appellant that the establishment of the rule contended for by the respondent would lead to great inconvenience, and make it the duty of the carrier of persons for hire in street-cars to provide its conductors with sufficient small coin to do a general exchange business with all passengers, thus requiring the company to intrust to a class of employees who are usually of no pecuniary responsibility, large sums of money. It is further said that if the tender of a five-dollar gold piece is a tender of the amount actually due, and the conductor is bound to receive it and return $4.95 to the passenger, the same principle would apply to the offer by the passenger of ten dollars or twenty dollars in gold or currency. With the question of convenience, however, we have nothing to do, except in so far as it bears upon the question whether the amount tendered was a reasonable sum, such as the carrier was bound to accept. It does not follow, if it be established as a rule that five dollars is a reasonable amount to be tendered to a conductor, that twenty dollars or fifty dollars is also a reasonable amount, and must be accepted. The fears of the appellant are based upon the assumption that passengers generally will contumaciously, to avoid the payment of fare, and require the companies to carry them free, offer coin of a large denomination. But these fears, we think, can safely be set aside upon the theory that a question like this will settle itself by a spirit of mutual accommodation between carrier and passenger. It is a well-known fact that the five-dollar gold piece is practically the lowest gold coin in use in this section of the country.

The case upon which the appellant relies — *Fulton* v. *Grand Trunk R. R. Co.*, 17 U. C. Q. B. 428 — is not quite in point. In that case the plaintiff had boarded a train of cars without a ticket, and when asked for his fare de-

clined paying it, as he said he had not made up his mind how far he should go. The conductor told him that he must decide, and afterward, on his declining again on the same ground, stopped the train and put him off. The plaintiff then tendered the conductor a twenty-dollar gold-piece, telling him to take his fare, $1.35, out of it. Under these circumstances the court very properly held that the plaintiff had refused to pay his fare within the meaning of a statute, very much like our own, and that the conductor was justified in refusing to carry him farther. The court said: "The general practice is for the passengers to pay at the office and get tickets; . . . . and a person rushing into a car without a ticket has no reason to expect that he will find the conductor prepared to change a twenty-dollar gold piece; for he relies upon receiving tickets from parties, or if money is to be paid to him instead, that it will be paid with reasonable regard to what is convenient under the circumstances." A distinction ought to be made, we think, between passengers traveling on steam-railroads and those traveling on street-railroads. Passengers of the former class are expected to prepare themselves with tickets, procured at the regular office established at the station where the trains regularly stop. Horse-cars and cable-cars stop at all points along the road at the beck of those desiring to ride, and the conductors do not, as a general thing, expect to receive tickets for the passage.

Judgment and order affirmed.

Fox, J., and Works, J., concurred.