Thomas Muldowney and Annie Muldowney, his wife, for use and right of said wife, *v.* the Pittsburg & Birmingham Traction Company, Appellant.

*Street railways—Fares—Reasonable regulations.*

Street railways may make reasonable regulations upon the subject of fares and refuse to carry passengers who will not comply with them.

*Province of court—Tender of five dollars for five cent fares not reasonable—Conductor's duty as to change.*

The reasonableness of a tender of money in excess of the fare is a question of law to be determined by the court. *Held*, that the tender of a five dollar bill for a five cent fare was unreasonable as a matter of law, and that the conductor was not bound to accept it and give back the change.

Argued April 12, 1898.   Appeal, No. 108, April T., 1898, by defendant, from judgment of C. P. No. 3, Allegheny Co., May T., 1896, No. 447, on verdict for plaintiff.   Before Rice, P. J., Wickham, Beaver, Reeder, Orlady, Smith and Porter, JJ.   Reversed.

Trespass.   Before McClung, P. J.

It appears from the evidence that the plaintiff, a passenger on one of defendant's cars, tendered a five dollar bill, claiming that she had no small change except three pennies.   The conductor refused to change the five dollar bill and directed her to get off.

Other facts sufficiently appear in the opinion of the court. The court charged the jury that the conductor was not

bound to furnish change for a five dollar bill tendered in payment of a five cent fare, and that if plaintiff was entitled to recover at all she was only entitled to recover for any damage or mortification to plaintiff after the alleged tender of fare by incoming passenger at the step of the car, if the jury believed that such a tender was made and refused by the conductor and not refused by the plaintiff.

Verdict and judgment for plaintiff for $90.00. Defendant appealed.

*Errors assigned* was refusal of binding instructions for defendant.

*A. W. Duff*, for appellant.

*T. H. Davis*, for appellee.—Being a lady, this fact should have prompted a due regard for her condition, and served to moderate the conductor's conduct. It was not necessary to subject her to the indignities which followed her offer of the five dollar bill, and to strike down this very moderate verdict and judgment, would be to sanction a rule that " would tend to encourage rather than prevent the commission of indignities to which no well-behaved passenger in a public conveyance should be subjected: Laird v. Traction Co., 166 Pa. 4.

OPINION BY RICE, P. J., October 10, 1898:

The plaintiff testified, that, when the conductor came to collect her fare, she discovered that the only money she had was a five dollar bill and three pennies; that she tendered him the bill, but he refused to change it, and said: " You will get off —You get off." She insisted, and said: "I will not get off; you take my fare." He replied, " Won't you? I'll see if you don't." He then passed through the car, and collected the fares of the other passengers, after which he stopped the car, and beckoning to her from the platform, where he stood, said : " You get off; get off here." This was several squares distant from the point where she had entered the car, and three or four squares from the point where the conductor had demanded her fare. A man who was about to enter the car evidently heard what the conductor had said; for, as the plaintiff was in the act

of leaving the car, but while she was still on the step, he said: "Why, what's the trouble, poor woman; got no money? Why, get back on; I'll pay your fare; I'll give you a nickel." The conductor said: "No, you let her go; let her go; I'll never change five dollars for a nickel." Being pressed upon cross-examination to narrate what she said and did at that juncture, with reference to this offer, she gave the following testimony: "Q. You say he said, 'I will give you a nickel.' Did he say that to you, or to the conductor? A. I suppose it was to either; the conductor would get it, you know. Q. Well, couldn't you tell whether he was addressing his conversation to you or to the conductor? A. I don't know; I suppose to both of us; I couldn't say and wouldn't say that it was to either one direct. Q. Then you refused to accept the nickel from this man, did you? A. I said, 'I've got money.' Q. And you refused to accept the nickel? A. Because the conductor said, 'No, let her go.' Q. Answer my question. Did you refuse to accept this nickel from this man? A. Why, I suppose I did when I had money of my own. Q. The fact is, you refused to accept the nickel? A. I was almost off the car at that time. Q. Well, can't you answer my question? It is very plain. Did you refuse to accept the nickel? A. He offered the money, and says, 'Got no money?' And I says, 'No, I've got money.' I didn't say, 'I won't take the nickel,' mind, because I had money. Q. Well, you didn't take it? A. I didn't take it. Q. And you got off the car? A. I got off the car because I was told to."

Assuming the truth of the plaintiff's version of her ejection from the car, can she maintain an action of trespass; and if she can, wherein did the trespass consist?

Unquestionably, street railway companies may make reasonable regulations upon the subject of fares, and refuse to carry passengers who will not comply with them. It would be unreasonable to expect conductors of street cars to be prepared to change bills of any denomination that passengers may present. On the other hand, where places are not provided for the sale of tickets, and it is the uniform custom for the conductors to change bills and coins, it would be a harsh rule to hold, that a passenger entering a car in good faith may be summarily ejected because he is unable to tender the exact fare.

MULDOWNEY *v.* TRACTION CO.

Opinion of the Court. [8 Pa. Superior Ct.

The true rule seems to be, that the reasonableness of a tender of money in excess of the fare is a question of law to be determined by the court. The court below held, that the tender of a five dollar bill for a five cent fare was unreasonable as a matter of law, and that the conductor was not bound to accept it and give back the change. As the learned judge said, the question is a new one, and we know of no Pennsylvania case ruling it. But this view was taken in a very well considered New York case, where, after showing that the question of the reasonableness of the tender upon an agreed state of facts was one of law, the court said: " When the defendant enacted the rule requiring its conductors to furnish change to a passenger to the amount of $2.00 it did all that could reasonably be expected of it in consulting the convenience of the general public, and it would be unreasonable and burdensome to extend the amount to $5.00. It would require conductors to carry a large amount of bills and small change on their persons, and greatly impede the rapid collection of fares:" Barber v. Central Park N. & E. R. R. Co., 151 N. Y. (1896) 237. See also Fulton v. Grand Trunk R. Co., 17 U. C. Q. B. 428, cited in 35 L. R. A. 489, note. The only case holding differently that has come to our notice is Barrett v. Market St. R. Co., 81 Cal. 296, 6 L. R. A. 336. There the court held that a tender of a five dollar gold piece was reasonable, but called attention to the well known fact as having some bearing upon the question, that the five dollar gold piece is practically the lowest gold coin in use in that section of the country. In the absence of any binding authority upon the question we conclude that the view taken by the court below is the true one.

We come then to the offer alleged to have been made by the stranger. It is worthy of notice—although we do not rest our decision on this ground—that this offer was not made until after the car had been stopped for the purpose of ejecting the plaintiff. See Ham v. D. & H. Canal Co., 142 Pa. 617. The more important features of the testimony upon this subject are, (1) that, judging by the terms in which it was framed, it was addressed, not to the conductor, but to the plaintiff; (2) that, by her own admission, she refused it. Whether or not the conductor ought to have accepted it, without affirmative evidence, express or implied, of her assent, is an immaterial ques-

tion here.   He was not bound to accept it in the face of her clearly unqualified dissent.   "What self-respecting lady," says her counsel, "with money in her pocket, would subject herself to such a compromising condition?   The law exacts no such sacrifice on the part of any person, much less a lady whose natural instincts would revolt at such a proposition; and more especially so, when travelling alone."   This was an entirely proper and dignified position for the plaintiff to take, but having chosen to stand on her legal rights growing out of the tender she had made, and having refused the offer, surely the conductor was not legally blamable for not subjecting her to the humiliation of having her fare paid by a stranger.

The conductor used no violence, nor, indeed, force of any kind in ejecting her from the car, and we have given all he said in the exact language of her testimony.   The suggestion of counsel, that he subjected her to unnecessary insult and humiliation, and, that this, of itself, might be a ground of recovery, needs no discussion.   Under the plaintiff's own testimony the conductor had a right to compel her to leave the car.   It was not an "inexcusable trespass" as it was in Laird v. Traction Co., 166 Pa. 4.   There was nothing in the manner in which it was done that, independently of other grounds, would justify a recovery in an action of trespass.

It follows, that the defendant's first point should have been affirmed.

The judgment is reversed.