## JONES *v.* LOUISVILLE & N. E. R. Co.

### [68 South. 924.]

1. CARRIERS.  *Ejectment of passengers.  Action.  Reasonableness of amount tendered for ticket.  Question for jury.*
   In a suit by a passenger against a railroad company for wrongful ejection from one of its trains on his refusing to pay a fare of four cents a mile to the conductor, after he had tendered a one hundred dollar bill to the agent of defendant at its union depot in payment of a fare of two dollars being three cents a mile, it was a question for the jury as to whether such tender to the agent was reasonable.

2. CARRIERS.  *Ticket.  Reasonableness of amount tendered.*
   A passenger need not tender the exact fare, but if he tenders a reasonable sum, the carrier must accept it and furnish change. What is a reasonable and what an unreasonable sum depends largely upon whether the carrier is a steam railroad or a street railway and upon the ease or difficulty in handling the passengers in each particular locality.

3. SAME.
   Where the passenger tendered the conductor a hundred dollar bill for transportation, simply requesting that the conductor return him the necessary change when they reached the city of New Orleans, there can be no question that so far as this tender on the train was concerned the size of the bill was immaterial.

APPEAL from the circuit court of Hancock county.
HON. T. H. BARRETT, Judge.

Suit by W. W. Jones against the Louisville & Nashville Railroad Company. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Gex & Waller,* for appellant.

The proposition that appellant had a right to refuse to pay an excessive fare, under the circumstances as hereinabove detailed, and to elect to be ejected rather than pay the excessive amount of four cents per mile demanded of him, is too well established to need any comment from us. See *Forsee* v. *Railroad Co.,* 63 Miss. 66.

We submit that it is not a question of law, under the circumstances detailed, for the court to pass upon the unreasonableness of the amount of the tender. In the first place, we contend that the Railroad is not in a position to seek any advantage of that fact, because they never plead it, it was never at issue before the court, and again if it had been at issue, it should have been raised by them in a plea, wherein the burden was on them, to show that the one hundred dollar bill was an unreasonable amount, taking into consideration the business done at the station, their facilities for carrying money, the size of the town and the amount of traffic from that point by the several railroads whose ticket offices are run conjointly; but even surmounting the possibility that the court could hold that without a special plea to that effect, we still insist that what was a reasonable tender must always be a question for the jury, under the facts as hereinabove detailed. If one hundred dollars was not a reasonable tender, then we, in all respect, ask the court what would be. Would the court fix it arbitrarily at fifty, or would it fix it at twenty? If not twenty, what would then be a reasonable

amount? If not ten, then we ask the court to venture to establish a rule for the future by stating what would be a reasonable amount, so that prospective passengers from Gulfport might, under the beneficent guidance of this court, know in what denominations they might take their money to the L. & N. Agent. We submit that what would be a reasonable amount varies in all cases with the magnitude of the business done at the respective depots, the size of the town, the number of people travelling thereto and therefrom, the magnitude of the business done by the railroad, the amount of money handled and facilities for carrying change. If one hundred dollars would be an unreasonable amount to tender at Gulfport, would it be an unreasonable amount in New York? If so in New York, would it be in Mobile or New Orleans? We submit that the court cannot undertake, therefore, to say what would be a reasoable amount at each and every depot or station. It might be said that, at a small way station where the entire amount handled at that station would not exceed eight or ten dollars, that one hundred dollars would be an unreasonable tender, but certainly it would not be in New York, where many railroads take in over fifty thousand dollars a day, nor could it be said that it was an unreasonable tender at Gulport, where, if the issue had been raised, unquestionably it could be shown that there is handled over the counter from a thousand to fifteen hundred dollars every day.

If the court were to hold that one hundred dollars was an unreasonable amount, then the traveling public is at the mercy of the various courts and the various imaginations of men as to what amount a passenger should take in change to any depot.

We are fully aware of the several decisions of some courts holding that a reasonable regulation may be adopted by street railway companies, with reference to the amount of change they will supply their conduc-

109 Miss.—42

tors with, but we insist that those decisions have no bearing at all upon the case at issue. The reasons upon which those regulations have been maintained, is apparent; the conductors on street railway cars, who have multifarious duties to perform, could not be required to be burdened with much cash, and to make change for large denominations of bills for a five cent transportation; moreover, he has no facilities for carrying cash except on his person, and that cash is exposed at times, subject to being lost, etc. But in the case of a railroad company, at a large Union depot, such as is maintained at Gulfport, where the companies have vaults, safes, and all modern conveniences and safeguards for carrying cash, and where it is the duty of the agent to be on hand at a reasonable time before the arrival of all trains, for the purpose of selling tickets, the same reasons applying in street railway cases, which by the way are not numerous, the courts have only held, where such regulations were adopted and the amounts were limited from two to five dollars change for a five cent transportation, that those regulations were not unreasonable.

In common reason and fairness we ask the court how else could the appellant have acted but in the manner in which he did act?

*Gregory L. Smith* and *Joel W. Goldsby,* for appellee.

The appellant boarded the train of the appellee without a ticket and tendered, in payment of his fare, one hundred dollars to the conductor, and declining to pay more than three cents a mile for his passage, and the tender to the conductor was conditioned upon the conductor's accepting three cents a mile, and not four cents a mile. This, under the pleadings of the case, we respectfully submit, put the burden upon the appellant to show that he had a right to travel upon the train, under the circumstances of the case, at the regu-

lar ticket rate of three cents per mile.    *Central of Ga.*
v. *Cannon*, 32 S. E. (Ga.) 874.

The complaint in this case, in effect, sets out that the
tender made by appellant was a reasonable one, and
this is a material allegation upon which is based the
whole right to recovery, and the plea of "not guilty"
of appellee placed upon the appellant the burden of
proving every material allegation in his complaint.
*Peaslee* v. *Gordon Falls Elec. & Mfg. Co.*, 135 Pac.
(Oregon) 521.

The court, in its decision, says it affirmatively appears
that the agent made no effort to change the bill.  While
there is no evidence as to what are the banking hours
in Gulfport, Mississippi, we respectfully call attention
to the fact that the testimony of the appellant himself
shows that he did not arrive at Gulfport until about
four o'clock in the afternoon, and Train No. 1, upon
which he took passage to New Orleans, was due to ar-
rive in Gulfport at about six o'clock in the evening,
and that he went to the depot of appellee about
twenty or twenty-five minutes before the train was due
to arrive, which would have been sometime after five-
thirty o'clock in the afternoon.  As the court states
in its opinion in this case, there is no evidence what-
ever to show the volume of business of the appellee at
this point.  And further, there is no evidence whatever
in the record whereby a jury in this case would have
had any facts to go upon to assist them in determining
whether or not the tender of a one-hundred-dollar bill
for a two dollar and one cent fare was reasonable, under
the circumstances of this case, and we respectfully sub-
mit that, under the opinion in this case, and accept-
ing it to be the law in the state of Mississippi, that, un-
der such circumstances, the tender of the one-hundred-
dollar gold certificate was not, as a matter of law, un-
reasonable, yet the burden was upon the appellant to
prove his case, and having failed to do so, the motion

of the appellee was correctly sustained by the lower court, because, in the absence of evidence supporting an issue, respecting which the burden of proof is upon one of the parties to the cause, the court is bound to find for the adversary. *Tate* v. *Rose,* 99 Pac. (Utah) 1003; *Dieterle, et al.* v. *Perkin,* 77 Pac. (Cal.) 664. And because the absence of evidence on any material point is fatal to the party having the burden of proof. *Steele's Admr.* v. *Hillman Land & Iron Co., et al.,* 114 S. W. (Ky.) 311; *Carnahan* v. *Shull,* 102 N. E. (Ind.) 144. See, also,—*Porter* v. *Still,* 63 Miss. 357.

STEVENS, J., delivered the opinion of the court.

Appellant, as plaintiff in the court below, sued appellee for the alleged wrongful ejection of appellant from one of the regular passenger trains operated by appellee between Mobile and New Orleans, through the state of Mississippi. Appellant, a resident of Crystal Springs, had occasion to go to George county to consummate the sale of some real estate. After selling his property and receiving, as a part of the purchase price, several one hundred dollar bills, he boarded the train of appellee at Pascagoula, Miss., and went to Gulfport, where he proposed to stay until the arrival of the regular fast train of appellee, due at Gulfport about two hours afterwards. While in Gulfport, appellant claims to have spent all the small change he had in his pocket, and he, in company with a traveling man, went to the station of appellee twenty-five minutes before train time for the purpose of purchasing transportation from Gulfport to New Orleans. The evidence shows, however, that the ticket agent did not open the window of his office and offer to sell tickets until the train blew for the station of Gulfport; that as the train came in sight the ticket agent threw open the window, and thereupon appellant tendered a one hundred dollar gold certificate to the agent and requested a ticket to

New Orleans, La., the regular fare being two dollars and one cent. The agent, without making any effort to change the bill, stated that he could not make the change, and said to appellant. ''You will have to pay your fare on the train.'' Thereupon the companion of appellant purchased his ticket and both boarded the train for New Orleans. When the conductor came around, appellant handed the one hundred dollar bill to him, stating to the conductor:

''I want to go to New Orleans. If you have not got the change, if we wait until we get to New Orleans we can get change at the ticket window and you give my change back. The ticket agent did not show up until a few minutes before the train got there, and he did not have any change, and he told me to pay my fare on the train.''

To this the conductor responded:

''You will have to pay four cents a mile.''

And appellant thereupon said:

''I will not pay four cents, because that is not the fare. I am willing to pay my regular fare. I tried to buy a ticket.''

The conductor, it seems, then stated:

''I do not know whether you tried to buy a ticket or not.''

And this statement thereupon brought on sharp words between the two, ending in a refusal on the part of appellant to pay four cents a mile and in the conductor, with the assistance of the negro porter, forcibly ejecting appellant from the train at the little station of Long Beach, at which this fast train did not usually stop. The testimony further shows that appellant had one heavy grip and a small grip and raincoat as his baggage; that, after being put off the train at Long Beach, he was required to walk half a mile with his baggage to catch a street car back to Gulfport; that at that time appellant was not well and, according to

his statement, suffered from the overexertion that evening; that he was compelled to miss the morning trains on the day following and to stay in Gulfport until he could get his one hundred dollar bill changed, and thereafter he went to New Orleans on an afternoon train, that put him in the city twenty-four hours late. Appellant offered to corroborate his statement to the conductor as to why he failed to buy a ticket, but it appears that the only difference between the conductor and appellant was the demand for the car rate instead of the regular ticket rate between Gulfport and New Orleans. After the introduction of testimony offered by the plaintiff, the defendant moved the court to exclude all the evidence and to grant the defendant a peremptory instruction. This motion was sustained, the peremptory instruction was granted defendant, and a jury verdict rendered in favor of the defendant, from which appellant prosecutes this appeal; assigning as error the exclusion of the testimony of plaintiff and the granting of the peremptory instruction.

The question is presented whether the railroad company was justified in demanding four cents a mile and, upon refusal to pay the car rate, in ejecting appellant from the train. Counsel for appellee are compelled to justify the action of the trial court by the proposition, as stated in their language:

"A person making a tender of money to pay fare cannot expect the agent or servant of the company to be prepared to make change in any amount, no matter how large, and there must be a reasonable approximation of the amount tendered to the fare"—citing several authorities.

An investigation of these cases discloses that they are all street railway cases.

In the case of *Barrett* v. *Market-St. Ry. Co.*, 81 Cal. 296, 22 Pac. 859, 6 L. R. A. 336, 15 Am. St. Rep. 61, the opinion says:

"A distinction ought to be made, we think, between passengers traveling on steam railroads and those traveling on street railroads. Passengers of the former class are expected to prepare themselves with tickets procured at the regular office established at the station where the trains regularly stop. Horse cars and cable cars stop at all points along the road at the beck of those desiring to ride, and the conductors do not, as a general thing, expect to receive tickets for the passage."

In this case the court held that a tender of a five dollar gold piece in payment of a five cent fare was not unreasonable, even in the case of a street railway. In many of the street railway cases cited it is shown that the companies had established and promulgated a rule to the effect that conductors would not be required to make change in excess of a certain amount—in some cases two dollars. None of these cases, however, are directly in point. In the instant case the question is whether a one hundred dollar gold certificate was an unreasonable amount to tender the ticket agent in a city the size of Gulfport, Miss., in payment for interstate transportation from Gulfport to New Orleans. The trial court held, as a matter of law, that appellant should have paid the train rate of four cents per mile, and thereby necessarily held that the one hundred dollar bill was an unreasonable amount to tender the agent at Gulfport. Each case of this kind must, of course, stand upon its own peculiar facts and circumstances. In volume 4, R. C. L. par. 558, it is stated in the text:

"It is well established that a passenger need not tender the exact fare, but that, if he tenders a reasonable sum, the carrier must accept it and furnish change. What is a reasonable and what is an unreasonable sum depends largely upon whether the carrier is a steam railroad or a street railway and upon the case or

diffiiculty in handling the passengers in each particular locality."

To the same effect is the note on page 642, vol. 10, Ann. Cas., and in the notes on page 1106, vol. 4, R. C. L., several cases are cited. The case of L. & N. R. R. Co. v. Cottengim (Ky.), 104 S. W. 280, 13 L. R A. (N. S.) 624, involved a steam railroad train, but in that case the passenger was drunk and demanded that the conductor give him his change before he (the passenger) released from his hand the money tendered in payment of his transportation. With a tender to the train conductor, however, we are not in this case concerned.

A careful consideration of this record convinces us that the trial court was in error in holding, as a matter of law, that the one hundred dollar bill was an unreasonable sum to tender in a cosmopolitan city like Gulfport, especially in view of the fact that the agent was in a union depot handling funds of two large railroads. It will be noted that the railroad company introduced no evidence whatever, and it is not even shown, except by inference, that the Louisville & Nashville Railroad Company had ever established a rule demanding four cents per mile as a train rate instead of three cents per mile, and there is no evidence whatever in the record as to the amount of business handled by the Louisville & Nashville Railroad Company at Gulfport or the facilities for making change at the union station there. It affirmatively appears that the agent was not at his post of duty and made no effort to change the bill. The railroad companies are, of course, in the business of providing transportation for hire, and owe, we think, a duty to the traveling public to provide reasonable facilities for making change at an important station like the one here involved. They are servants and not masters. The lack of adjudicated cases on this point indicates, in the language of Patterson, J., in the *Barrett Case, supra:*

"That a question like this will, as is usual, settle itself by a spirit of mutual accommodation between carrier and passenger."

No point can be made upon the sufficiency of the tender by appellant to the conductor. Appellant in fact tendered the conductor one hundred dollars for transportation, simply requesting that the conductor return appellant the necessary change when they reached the larger city of New Orleans. There is no question, therefore, that, so far as this tender on the train was concerned, the size of the bill is immaterial.

We do not undertake to lay down any rule defining what is and what is not reasonable tender in all cases. This is a mixed question of fact and law to be determined in each case, taking into account always the size of the city, town, or village, where the passage is demanded, the volume of business done, and the facilities for making change. We do say, however, that in this particular case the court could not, as a matter of law, declare the one hundred dollar bill an unreasonable amount in a city like Gulfport. There is no question of the good faith of appellant, and surely we have fallen on uncertain times if a white gentleman with a pocket full of one hundred dollar bills cannot buy first-class passage on a train operated by a common carrier doing both an interstate and intrastate business without paying a premium so to do, especially when he has transacted all business on hand and is destined for the attractive and cosmopolitan city of New Orleans. Such conduct on the part of the railway company comes near violating the constitutional guaranty accorded every citizen of the "pursuit of happiness."

*Reversed and remanded.*

SMITH, C. J. (dissenting).

The rule which I understand my Associates to announce, and with which I am in accord relative to

the duty of a ticket agent of a common carrier in the making of change when the amount tendered him exceeds the amount of the fare demanded, is that laid down in 6 Cyc. p. 547, that:

"While the tender of more than the amount, with the requirement of the making of change may perhaps, under the ordinary usages of such business, be sufficient, yet the person making the tender cannot expect the agent or servant of the carrier to be prepared to make change in any amount, no matter how large, and there must be a reasonable approximation of the amount tendered to the fare."

This rule seems to me to require an affirmance of the judgment of the court below, for I think that it can be said, as a matter of law, that a one hundred dollar bill does not reasonably approximate a fare of two dollars and one cent. To require a railroad company to keep its ticket agent supplied with sufficient money to change all bills of this amount that may be tendered them in payment of small fares will not only seriously handicap it in its business by keeping an unnecessarily large amount of its money thus tied up, but will make its ticket officers the most attractive of places for burglars and robbers; and, moreover, its agents cannot transact their business with that expedition to which the traveling public is entitled, if all or a great part of the intending passengers put them to the trouble of changing bills for large amounts tendered in payment of small fares.